[Cite as *State v. Jordan*, 2017-Ohio-5827.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-17 |
| | : | |
| v. | : | T.C. NO. 16-CR-101 |
| | : | |
| RAYMOND T. JORDAN | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___14th___ day of _____July_____, 2017.

. . . . . . . . . .

JANE A NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

RICHARD L. KAPLAN, Atty. Reg. No. 0029406, P. O. Box 751192, Dayton, Ohio 45475
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Raymond T. Jordan pled guilty in the Champaign County Court of Common Pleas to four counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4); two counts concerned Jordan's granddaughter, H.J., who was 11 years old at the time of the offenses, and two concerned H.J.'s friend, H.T., who was 12 years old at the time of the

offenses. Because the girls were under 13 years old, each offense was a felony of the third degree with a possible maximum penalty of 60 months in prison. In exchange for the plea, the State dismissed two counts of rape.

{¶ 2} After a presentence investigation, the trial court sentenced Jordan to 48 months in prison for each count of gross sexual imposition, to be served consecutively for an aggregate sentence of 192 months (16 years) in prison. Jordan was required to pay fines totaling $500, as well as attorney fees and costs. Jordan was designated a Tier II sex offender.

{¶ 3} Jordan appeals from his conviction, claiming that the trial court erred in failing to merge allied offenses of similar import and to impose community control. For the following reasons, the trial court's judgment will be affirmed.

## I. Allied Offenses of Similar Import

{¶ 4} In his first assignment of error, Jordan claims that the trial court erred in failing to merge the two charges concerning H.T. and the two charges concerning H.J. He asserts that he should have been sentenced on only one charge regarding H.J. and one charge regarding H.T and that, at most, he should have received 96 months in prison (48 months for each victim).

{¶ 5} Ohio's allied offense statute, R.C. 2941.25, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of

dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 6}** " 'As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. The Supreme Court has further explained:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the

meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff* at ¶ 26.

{¶ 7} According to the record, the offending sexual conduct occurred in the summer of 2014 while H.T. and H.J. were having a sleepover at Jordan's house. The two girls went into Jordan's bedroom to watch movies. Jordan was in the bedroom, too, drinking alcohol. While the girls were in the bedroom, Jordan raised up H.T.'s and H.J.'s shirts and touched their bare breasts. Jordan also touched their vaginas with his hand; H.T. reported that Jordan's hand went under her underwear to touch her vagina. (The girls also alleged that Jordan had H.T. and H.J. put their mouths on his penis; this conduct was addressed in Counts 1 and 2, which were dismissed as part of the plea.)

{¶ 8} Counts 3 and 4 of the indictment each allege that Jordan touched the girl's breast with his hand. Counts 5 and 6 each allege that Jordan touched the girl's vagina with his hand. Counts 3 and 5 of the indictment concern Jordan's conduct toward H.T., and Counts 4 and 6 concern Jordan's conduct toward H.J.

{¶ 9} Jordan claims that the trial court should have merged Count 3 (breast touching) with Count 5 (vaginal touching), both of which concern H.T. He similarly claims that the trial court should have merged Count 4 (breast touching) with Count 6 (vaginal touching), both of which concern H.J. Jordan argues that the all of the offenses occurred during the overnight visit at his house, that they were committed "at the same time on each girl," and that Jordan had the same animus ("sexual gratification during each touching") for each offense.

{¶ 10} The touching of H.T.'s and H.J.'s breasts and vaginal areas were part of one assaultive event. Nevertheless, the trial court found at sentencing the breast touching and the vaginal touching were "separate acts even though they were committed near in time." The trial court noted that "the touching of the breast and touching of the genitalia is equally serious."

{¶ 11} We agree with the trial court that Jordan's touching of H.T.'s breast and vaginal area were separate acts, each with a distinct significance or import, and the same is true of Jordan's touching of H.J.'s breast and vagina. *Accord, e.g., State v. J.M.*, 10th Dist. Franklin No. 14AP-621, 2015-Ohio-5574 (rape counts relating to different parts of the body do not merge); *State v. Chamberlain*, 12th Dist. Brown No. CA2013-04-004, 2014-Ohio-4619, ¶ 71 ("It is well-established that distinct, different kinds of sexual activity constitute separate offenses for sentencing purposes."); *State v. Daniels*, 9th Dist. Summit No. 26406, 2013-Ohio-358 (defendant's digital penetration of the victim's vagina, fellatio, and vaginal intercourse with the victim were separate acts of rape for which defendant could be separately punished); *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 33. The trial court did not err in failing to merge the offenses relating to the same girl as allied offenses of similar import.

{¶ 12} We note that Jordan does not claim that the counts concerning H.T. should merge with the counts concerning H.J. Because Counts 3 and 5 (H.T.) involved a different victim than Counts 4 and 6 (H.J.), the trial court properly did not merge Count 3 with Court 4 or Count 5 with Count 6.

{¶ 13} Jordan's first assignment of error is overruled.

## II. Failure to Impose Community Control

{¶ 14} In his second assignment of error, Jordan claims that the trial court erred in imposing a prison term, rather than community control.   There is no assignment of error concerning the consecutive nature of the sentences, including the proportionality of the consecutive sentence to the offenses.

{¶ 15} Jordan was indicted for and pled guilty to gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third-degree felony.   That provision states: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * * (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."   R.C. 2907.05(A)(4).   Pursuant to R.C. 2907.05(C)(2) and R.C. 2929.13(D)(1), a violation of R.C. 2907.05(A)(4) carries a presumption of prison.   If the presumption of prison is overcome, the trial court may impose community control.   *See State v. Bevly*, 142 Ohio St.3d 41, 2015-Ohio-475, 27 N.E.3d 516, ¶ 25.[1]

{¶ 16} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard.   *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9.   Under

---

[1] It is not clear how the presumption of prison can be overcome for violations of R.C. 2907.05(A)(4).   In general, R.C. 2929.13(D)(2) provides that the trial court may impose community control instead of prison if it finds that community control would adequately punish the offender and protect the public from future crime and that community control would not demean the seriousness of the offense.   However, R.C. 2929.13(D)(1) expressly states that the provisions in R.C. 2929.13(D)(2) do not apply to the presumption of prison for a violation of R.C. 2907.05(A)(4).   R.C. 2929.13 does not otherwise indicate how the presumption in favor of a prison term can be rebutted for violations of R.C. 2907.05(A)(4).

R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 17} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 18} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed

for similar crimes committed by similar offenders."

{¶ 19} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense. R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense.

{¶ 20} R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. The factors indicating that recidivism is more likely include that the offender has a history of criminal convictions and that the offender "shows no genuine remorse for the offense." R.C. 2929.12(D)(2), (5). The factors weighing against a likelihood of recidivism include that the offender "had led a law-abiding life for a significant number of years," the offense was committed "under circumstances not likely to recur," and the offense "shows genuine remorse for the offense." R.C. 2929.19(E)(3), (4), (5).

{¶ 21} Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record. Jordan did not serve in the military.

{¶ 22} At the sentencing hearing, the trial court heard from the prosecutor, defense counsel, and Jordan, and a statement from H.J. The prosecutor described the circumstances surrounding the offenses, including the conduct underlying the dismissed rape charges, and argued that Jordan continued to minimize his conduct by insinuating that the conduct was accidental. The prosecutor highlighted several factors that supported a prison sentence, including that Jordan's relationship with H.J. facilitated the offense and that Jordan was in a position of trust and authority when the offenses occurred. The prosecutor argued that Jordan has never shown genuine remorse, and

that recidivism was likely because Jordan "has yet to fully accept responsibility and admit the extent of his conduct." The State further argued that the ages of children should be taken into account during sentencing.

{¶ 23} The prosecutor further addressed the effect of the offenses on the two girls. With respect to H.J., the prosecutor stated that, since the offenses, H.J. had "expressed emotional difficulties, anger, stress, the sadness of losing her friend, and the sadness of losing family relationships. She now has a fear of people. She has lost her ability to trust to a certain extent. She fears men. She has ongoing nightmares that she deals with." As to H.T., the prosecutor described her as "emotionally fragile, fearful, and anxious" and noted that H.T. was cutting herself as a result of Jordan's conduct.

{¶ 24} The prosecutor argued that consecutive sentences were appropriate, and it asked for a sentence between 16 and 20 years in prison.

{¶ 25} H.J.'s mother read a written statement prepared by H.J. In that letter, H.J. expressed that her grandfather had taken advantage of her and that the experience has caused her be angry, scared, and very sad. She described the fears that she now has, such as worry that people will treat her differently, fear of men, and difficulty meeting new people. She further described how the offenses have affected her relationship with her family and expressed sorrow that she lost her friend as a result of the offenses.

{¶ 26} Defense counsel described Jordan as "extremely remorseful." Counsel emphasized that Jordan had been a law-abiding citizen since 1976 (he had a conviction for robbery, for which he served a short period of incarceration), has been married for more than 40 years, and had steady employment before his incarceration for the offenses. Counsel noted that Jordan's physical and mental health had declined in jail and that "he's

developed these issues because of the pain he feels for what he did to these two girls in this matter." Counsel expressed that Jordan was remorseful for the effects on his family. Counsel noted that Jordan was drinking at the time of the offenses, which contributed to his behavior. Counsel asked the court to consider community control and, if prison were imposed, concurrent sentences.

{¶ 27} Jordan spoke on his own behalf, telling the trial court that he was "very, very, very remorseful." Jordan apologized to "all in this case," asked for forgiveness, and described how his health had suffered while in jail for 105 days since the charges were filed.

{¶ 28} The trial court questioned Jordan about his remorsefulness, asking about Jordan's failure to fully accept responsibility for his actions when talking about the offenses with others, including his wife and the presentence investigator. The PSI indicates that Jordan originally told the police that "he and H.T. and H.J. were wrestling and playing around" and that "he may have touched their chests, but not as they explained it." In his statements to the police, Jordan had originally denied touching the girls' genitals. Jordan wrote for the presentence investigation:

> I was drinking at the time had drank quite a lot an[d] I feel awful very, very very sorry! I am so ashamed of myself an[d] I am so sorry for anyone I hurt. I ask they would forgive me as I ask God everyday to forgive me, Again I am so sorry. Just laughing an[d] playing, I thought. I am so so so sorry. I pray that I hurt know [sic] one.

Upon inquiry from the trial court, Jordan agreed that his behavior and statements to his wife and the presentence investigator could suggest that he was not genuinely

remorseful.

{¶ 29} According to the presentence investigation, Jordan was 59 years old, had an 11th grade education, had been employed as a factory worker since 2004, had been married for more than 40 years, and had lived for last 25 years in the same home, which he and his wife own. The couple have two adult children. Jordan had one conviction for OVI, a misdemeanor, in 1996, and no juvenile record. The presentence investigation did not reveal the 1976 robbery; the trial court added that information to the PSI based on Jordan's representations at the sentencing hearing. Jordan's ORAC (risk assessment) score was "low." Jordan reported fair physical health and a history of anxiety and depression. He indicated that he drank twice per week since age 22; his only reported drug use was marijuana with his last usage 40 years ago.

{¶ 30} The presentence investigator recommended a "significant prison term," but "less than the maximum sentence allowed by law," given Jordan's lack of a prior criminal history or sex offense history. The investigator wrote: "Offender appears to be seriously minimizing his offense. He does not appear to completely grasp the concept of the harm he has caused his granddaughter and her friend. * * * This investigator finds Offender's minimalized version highly incredible, and is seriously concerned that he will offend again if returned to the community with the lesson that his rationale makes this behavior acceptable. It does not." The investigator further believed that offenses were not the result of heavy drinking and, instead, "the alcohol use was incidental to the offense itself."

{¶ 31} In sentencing Jordan, the trial court made three "more serious" findings: (1) "The physical or mental injury suffered by the victims of the offense due to the conduct of Defendant was exacerbated because of the * * * age of the victims," (2) "The victims of

the offense suffered serious physical, psychological, or economic harm as a result of the offense," and (3) "The offender's relationship with one of the victims facilitated the offense." R.C. 2929.12(B)(1), (2), (6). The court further found that (1) the "child-victims were at the Defendant's home for a sleepover, and the Defendant was in loco parentis to the child-victims," and (2) "[m]ultiple child-victims were sexually assaulted in multiple ways by a family childcare giver." The court found that no "less serious" factors applied.

{¶ 32} With respect to recidivism, the court found that Jordan had a history of criminal convictions and showed no genuine remorse for the offense. R.C. 2929.12(D)(2), (5). The court additionally found that recidivism was likely because Jordan failed in the PSI to fully accept responsibility for his conduct and that his failure "to acknowledge his full responsibility is a significant obstacle in his ability to benefit from treatment in order to prevent these crimes from happening again in the future." As to the factors regarding whether Jordan was less likely to commit future crimes, the court found that Jordan had not been adjudicated a delinquent child, had led a law-abiding life for a significant number of years, and that the offense was committed under circumstances not likely to recur "as his grandchildren will never be left alone again with the Defendant." The court concluded that the factors establishing that recidivism was more likely outweighed the factors establishing that recidivism was less likely.

{¶ 33} The trial court imposed a prison term, finding that community control would not adequately punish Jordan and protect the public from future crime, because the factors indicating a lesser likelihood of recidivism did not outweigh the factors indicating a greater likelihood of recidivism. The court further found that community control would demean the seriousness of the offenses, finding that the "more serious" factors

outweighed the "less serious" factors.

{¶ 34} On appeal, Jordan argues that the trial court erred in its evaluation of the seriousness factors of R.C. 2929.12 by (1) giving undue weight to the fact that Jordan was acting in loco parentis at the time of the offenses, (2) improperly relying on unsworn statements regarding H.T. and H.J. to find psychological harm, and (3) finding that the mental injury was exacerbated by the children's ages. Jordan states that "the only statutory factor which the trial court could consider regarding seriousness of the offense, as there was [a] factual basis for the finding, is that there was the relationship facilitating the offense(s)." Jordan also claims that the trial court erred in failing to consider Jordan's use of alcohol at the time of the offenses as a mitigating factor. In addition, Jordan argues that the trial court's findings regarding his risk of recidivism were inconsistent with each other, that the offenses occurred under circumstances that were unlikely to recur, and that the court erred in finding that Jordan was not remorseful. Jordan argues that "community control would adequately punish Mr. Jordan without demeaning the purposes of sentencing."

{¶ 35} At the outset, the trial court did not err in consider the unsworn statements by the prosecutor, defense counsel, Jordan, and H.J., as well as the information contained in the presentence investigation report. "The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." (Citation omitted.) *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). A trial court at sentencing may take into consideration hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a

PSI report. *See, e.g., State v. Bautista*, 2d Dist. Clark No. 2016-Ohio-5436, ¶ 12 ("the trial court was entitled to consider the facts associated with the other 14 felony counts that were dismissed as part of the plea agreement"); *State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8 (at sentencing, a trial court may consider hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, facts related to a charge that was dismissed under a plea agreement, and allegations of uncharged yet undisputed conduct).

{¶ 36} Accordingly, the trial court was entitled to consider the information in the presentence investigation report, the prosecutor's statements regarding the emotional harm suffered by H.T. and H.J., H.J.'s statement to the court, and the two rape charges that had been dismissed as part of the plea agreement. (The trial court indicated at sentencing that it would not consider the dismissed rape charges in weighing the seriousness factors.)

{¶ 37} Upon review of the record, we cannot find by clear and convincing evidence that the trial court erred in sentencing Jordan to prison rather than community control. The prosecutor's statement to the court described the psychological harm that both H.T. and H.J. had suffered, and H.J. provided a statement that reiterated that she suffered and continues to suffer psychological harm due to the offenses. There is no dispute that Jordan's relationship with H.J. facilitated the offenses.

{¶ 38} We question the trial court's finding that the offense was "more serious" due to the age of the victims. By definition, a violation of R.C. 2907.05(A)(4) involves a child younger than 13 years old; H.T. and H.J. were 12 and 11 years old, respectively. As a general proposition, "it is logically impossible for an element of an offense to also make

that conduct constituting the offense more serious than other conduct normally constituting the offense." *State v. Thomas*, 2d Dist. Montgomery No. 26123, 2014-Ohio-5262, ¶ 17. The record does not support a conclusion that the particular ages of H.T. and H.J. render the offenses before us more serious than other violations of R.C. 2907.05(A)(4).

{¶ 39} Jordan further claims that the trial court should have considered his intoxication at the time of the offense as a mitigating factor. While Jordan perhaps might not have engaged in the same behavior had he not been intoxicated, the trial court reasonably concluded that his intoxication did not make his behavior less serious.

{¶ 40} The exchange between the trial court and Jordan at sentencing revealed that Jordan had not accepted responsibility for his actions during his conversations with his wife and the presentence investigator. And while Jordan expressed regret and sought forgiveness at sentencing, his statements could have been interpreted by the trial court as reflecting that he was more concerned with the consequences he faced for his actions than with the harm done to his granddaughter and her friend.

{¶ 41} Jordan was 59 years old when he was sentenced, and he had not been convicted of a felony for the past 40 years. Nevertheless, in evaluating Jordan's likelihood of recidivism, the trial court gave substantial weight to Jordan's apparent failure to take full responsibility for his actions, and the record supports the trial court's conclusion that Jordan minimized the wrongfulness of his conduct. (As stated above, the trial court noted that it could consider the dismissed rape charges, but it indicated that it would not use that information to make the sentence more serious.)

{¶ 42} In short, considering the available information before the trial court, we

cannot find that the imposition of prison terms, as opposed to community control, was clearly and convincingly unsupported by the record. *See, e.g., State v. Brooks*, 11th Dist. Trumbull No. 2015-T-0111, 2016-Ohio-4743 (affirming prison sentence for gross sexual imposition, despite low ORAC score and minimal criminal history, where defendant lacked remorse, the victim was seven years old, the defendant was the victim's step-grandparent, and victim suffered psychological harm).

{¶ 43} Jordan's reaction to his sentence at sentencing reflects that he believes that his aggregate sentence is unduly harsh. In imposing consecutive sentences, the trial court found, pursuant to R.C. 2929.14(C)(4), that (1) consecutive service was necessary to protect the public from future crime or to punish Jordan, (2) consecutive sentences were not disproportionate to the seriousness of Jordan's conduct and to the danger he poses to the public, and (3) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Jordan's conduct.

{¶ 44} Jordan has not challenged on appeal the trial court's findings in support of its decision to impose consecutive sentences, including whether consecutive sentences were disproportionate to his conduct and to the danger he poses to the public. *Cf. State v. Cooper*, 5th Dist. Ashland No. 14-COA-039, 2016-Ohio-5064 (Hoffman, J., dissenting). Instead, he has limited his argument to whether the trial court erred in imposing a prison sentence rather than community control. Accordingly, we state no opinion on the trial court's decision to impose consecutive sentences.

**{¶ 45}** The second assignment of error is overruled.

### III. Conclusion

**{¶ 46}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Jane A. Napier
Richard L. Kaplan
Hon. Nick A. Selvaggio