[Cite as *State v. Burgos-Delgado*, 2023-Ohio-1817.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                       No. 111992

    v.                             :

JUAN A. BURGOS-DELGADO,                 :

    Defendant-Appellant.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 1, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-625204-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee*.

P. Andrew Baker, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Juan A. Burgos-Delgado, appeals from his judgment of conviction, which was rendered after a jury trial on two joined indictments. After a thorough review of the facts and pertinent law, we affirm.

**Procedural History**

{¶ 2} The first incident giving rise to indictment occurred on January 7, 2018, and was charged in Cuyahoga C.P. No. CR-18-625204. In that case, Burgos-Delgado and a codefendant, Wilfredo Garcia-Rodriguez, were charged with the following crimes relative to the homicide of James Dowell: Count 1, aggravated murder in violation of R.C. 2903.01(B); Count 2, aggravated murder in violation of R.C. 2903.01(A); Count 3, aggravated burglary in violation of R.C. 2911.11(A)(1); Count 4, aggravated robbery in violation of R.C. 2911.01(A)(3); Count 5, kidnapping in violation of R.C. 2905.01(A)(2); Count 6, kidnapping in violation of R.C. 2905.01(A)(3); Count 7, aggravated robbery in violation of R.C. 2911.01(A)(1); and Count 8, kidnapping in violation of R.C. 2905.01(A)(2). Counts 1 through 8 all contained one- and three-year firearm specifications, notices of prior conviction, and repeat violent offender specifications. A final count, Count 9, related solely to codefendant Garcia-Rodriguez being charged with having weapons while under disability.[1]

{¶ 3} The second incident occurred on January 18, 2018, just days after the homicide, and was charged in Cuyahoga C.P. No. CR-20-647651. The charges in

_____

[1] Garcia's case proceeded to a separate jury trial on all charges except Count 9, having weapons while under disability, which was tried to the bench. The jury found him guilty of murder, a lesser-included offense of Count 1, guilty of Count 3, aggravated burglary, and not guilty on the other charges. The trial court found him guilty of Count 9, having weapons while under disability. The trial court sentenced Garcia-Rodriguez to 29 years to life. His conviction and sentence were upheld on appeal. *See State v. Garcia-Rodriguez,* 2022-Ohio-4283, 202 N.E.3d 729 (8th Dist.).

that case resulted from a traffic stop of a vehicle Burgos-Delgado was driving and consisted of one count of tampering with evidence in violation of R.C. 2921.12(A)(1) and one count of drug possession in violation of R.C. 2925.11(A).

{¶ 4} The state filed a motion to join the indictments for one trial. Defense counsel agreed to the joinder and the cases were heard together in a single jury trial. The state presented 11 witnesses, and after it rested the defense made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied. The defense did not present any witnesses on its behalf.

{¶ 5} After its deliberations, on the homicide charges, the jury found Burgos-Delgado guilty of Counts 1, 3, 4, 5, 6, 7, and 8, as well as the accompanying one- and three-year firearm specifications. The jury found him not guilty of Count 2. At sentencing, Counts 5 and 6 merged with Count 4 and the state elected to proceed on Count 4; and Counts 7 and 8 merged and the state elected to proceed on Count 7. The trial court sentenced Burgos-Delgado on Count 1, aggravated murder, to life without parole, plus three years on the firearm specification, to be served prior to and consecutive to the underlying charge, and ten years on the remaining counts after merger, to be served consecutively to each other. The trial court further ordered that the gun specification on Count 7 be served consecutive to the gun specification on Count 1.

{¶ 6} On the drug charges, the jury found Burgos-Delgado guilty of both counts (tampering with evidence and drug possession). The trial court sentenced him to 36 months on Count 1, tampering with evidence, and 12 months on Count 2,

drug possession. The sentences were ordered to be served concurrently and concurrently to the sentence on the homicide charges.

**Trial Testimony**

**Homicide of Dowell**

{¶ 7} E.R., who was 14 years old at the time of the crime, testified that at the relevant time he lived with his mother and her boyfriend, codefendant Garcia-Rodriguez, who was known as "Jyto." The victim, Dowell, was a friend of E.R.'s family and E.R. would buy marijuana from him. E.R. testified that on at least two occasions prior to Dowell's murder, he and Garcia-Rodriguez had been together when purchasing marijuana from Dowell.

{¶ 8} E.R. testified that on the day of the murder he had been at his cousin's house and he left the house on foot to go home. On his way home, he noticed his mother's car parked outside a house. He was surprised to see her car at the house and knocked on the door of the house to find out why she was there. Garcia-Rodriguez answered the door. Burgos-Delgado, who E.R. had not previously known, was in the house. E.R. described Burgos-Delgado as shorter and "chubbier" than Garcia-Rodriguez and as having a limp when he walked.

{¶ 9} Garcia-Rodriguez told E.R. that they were about to rob Dowell. Garcia-Rodriguez and Burgos-Delgado had two guns — both automatics, one was bigger and a "regular" color and the other was smaller and light blue. E.R. left with the duo in his mother's car, with Burgos-Delgado driving. Burgos-Delgado drove them to Dowell's house and parked in an alley behind the house. Burgos-Delgado told E.R.

that if he did not do as Burgos-Delgado instructed him, Burgos-Delgado would kill his mother, aunt, and niece. E.R. testified that he was instructed to go into Dowell's house and leave the door unlocked so that Burgos-Delgado and Garcia-Rodriguez could gain access to the home.

{¶ 10} Following Burgos-Delgado's instruction, E.R. went to Dowell's side door and knocked on it. Dowell answered the door, let E.R. in, and E.R. left the door unlocked. There was a female in the house with Dowell. E.R. asked Dowell for marijuana.

{¶ 11} Shortly after entering Dowell's house, Burgos-Delgado and Garcia-Rodriguez entered the house through the door E.R. left unlocked. They were both wearing masks on their faces — one had a dark one and the other had a blue one. They also both had gloves on and both had guns, which they pointed at Dowell and the female as they told them to get on the ground.

{¶ 12} Dowell resisted and fought with Garcia-Rodriguez. E.R. testified that he heard Dowell ask Jyto (Garcia-Rodriguez's nickname) why he was doing this. According to E.R., Burgos-Delgado had the light blue gun and used it to hit Dowell on the head. As Dowell and Garcia-Rodriguez continued to fight, Garcia-Rodriguez's gun fell to the ground and Burgos-Delgado retrieved it. Burgos-Delgado, who was within "arm's reach" of Dowell, shot Dowell first in the chest and then in the head.

{¶ 13} Burgos-Delgado threw a bag to E.R. and told him to take everything off of a nearby table. E.R. grabbed a bag of marijuana off the table and he, Burgos-

Delgado, and Garcia-Rodriguez fled Dowell's house and went to Burgos-Delgado's house.

{¶ 14} A few days after the shooting, a detective came to E.R.'s school and talked to him. E.R. initially lied to the detective about his knowledge of and involvement in the shooting. Eventually, after Garcia-Rodriguez had been identified as a suspect, E.R. told the truth. E.R. testified that he lied because he was scared by Burgos-Delgado's threat to kill his family.

{¶ 15} The female who E.R. testified was in Dowell's house was identified as Savannah Alley. She acknowledged that Dowell was a drug dealer and she was often with him when he made his sales. She testified that she was at Dowell's house on the day of the shooting, and someone called him asking for $5 worth of marijuana. Later, "a kid" (E.R.) came to purchase the marijuana. While Alley and Dowell were in the kitchen with E.R., two men ran in. One had a black gun and the other had a blue gun. The bigger of the two men had her on the ground with his gun to her head, while the other man fought with Dowell. Dowell said to the man who he was fighting with, "Jyto, I know it's you, why would you do this to me?"

{¶ 16} Alley further testified that one of the men pistol-whipped Dowell and put duct tape on his face. She then heard gunshots and was able to run away and hide in another part of the house. After a few minutes she heard a car pull off. Alley discovered that the intruders took her cell phone so she alerted the police through Dowell's house alarm system.

{¶ 17} Law enforcement, who responded to the scene, recovered the following evidence: (1) a spent bullet under Dowell's body, (2) a spent casing on the kitchen floor, (3) a spent casing on top of the washing machine in the laundry room, which was adjacent to the kitchen, (4) a roll of gray duct tape with a crumpled piece of it with suspected blood still attached to the roll, (5) suspected blood outside in the snow leading from Dowell's house towards the alley, (6) a black winter cap, and (7) a piece of blue duct tape.

{¶ 18} Alley was able to identify both E.R. and Garcia-Rodriguez to the police. Garcia-Rodriguez was apprehended first. After Garcia-Rodriguez's interview with the police, an arrest warrant was issued for Burgos-Delgado. Further, a search warrant for Burgos-Delgado's home was issued and during the execution of the search, blue duct tape, a light blue semiautomatic handgun, and ammunition were recovered from Burgos-Delgado's home.

{¶ 19} Trace evidence testing was conducted on the blue duct tape recovered from the crime scene and the blue duct tape found in Burgos-Delgado's home. The initial testing tended to show that the blue duct tape found outside of Dowell's home was not directly torn from the roll found at Burgos-Delgado's home, or if it was, there was a piece missing between. However, further testing revealed that the two blue duct tapes had a "level III association." The trace evidence witness testified that there were no microscopic differences between the backing, the adhesive, and the fibers on the strip of duct tape found at the scene and the roll found in Burgos-

Delgado's home, which meant that although the ends of the strip and roll did not match up, the strip could have come from the roll.

{¶ 20} A witness testified about the ballistic testing that was performed. According to the witness, the two spent casings from the crime scene, along with the spent bullet recovered from under Dowell's body, were all the same 7.62 by 25-millimeter rounds and were fired by the same caliber firearm. The witness testified that the ammunition recovered from Burgos-Delgado's home was also 7.62 by 25-millimeter. The witness compared the ammunition from Burgos-Delgado's home with the two fired casings from the crime scene and found that the ammunition from the home had the same ejector and extractor marks on them as did the two fired casings from the crime scene. Thus, according to the witness, the two live rounds from Burgos-Delgado's home were "cycled through" the same firearm that fired the two spent casings at the crime scene. She explained that "cycling" occurs when someone loads a round into the chamber of a gun and then racks the slide to eject it without firing it.

{¶ 21} DNA testing was also performed, and a witness testified as to the results. The roll of gray duct tape recovered from the crime scene contained Dowell and Garcia-Rodriguez's DNA on the sides of the roll. The winter cap recovered from the crime scene had Garcia-Rodriguez's DNA in it. The blood outside the house leading toward the alley, as well as blood on the strip of blue duct tape found near the alley, was Dowell's. The roll of blue duct tape from Burgos-Delgado's home

contained the DNA of Burgos-Delgado, Garcia-Rodriguez, and Dowell, with the greatest percentage of the DNA being Burgos-Delgado's.

{¶ 22} The chief deputy medical examiner for Cuyahoga County testified about the autopsy protocol for Dowell. Dowell was shot twice. One bullet entered the left back of Dowell's head and exited around his right eye, passing through the skull. The second bullet went through Dowell's right upper arm, entering on the inside of the bicep area and exiting the tricep area of the right upper arm. Dowell also suffered injuries to his face and knees, which the deputy medical examiner opined were caused by blunt trauma suffered during a fight or by being struck with an object.

{¶ 23} The deputy medical examiner testified that unburned gunpowder caused stipple wounds to the skin by the left back of Dowell's head, which indicated that he had been shot at close range. Specifically, the deputy medical examiner opined that the gun had been less than 18 inches from Dowell's head when it was fired. The deputy medical examiner further determined that Dowell had suffered three separate blows to his head apart from the gunshot wound. Moreover, Dowell had other stipple wounds on his face from being close to another gunshot that was fired, separate from the gunshot to the back of his head that killed him. Based on the stippling to Dowell's face and the entrance and exit wounds to his arm, the deputy medical examiner opined that Dowell could have had his arm raised over his face as a defensive action. The gunshot wound to Dowell's head would have immediately caused Dowell to become totally incapacitated. Thus, the deputy

medical examiner believed that the shot to Dowell's arm, in which Dowell had a defensive posture at the time the bullet was fired, occurred first.

**Tampering with Evidence and Drug Possession**

{¶ 24} Approximately one-and-a-half weeks after the murder of Dowell, Burgos-Delgado was stopped by an Ohio State Highway trooper for a traffic infraction. A run of Burgos-Delgado's license plate revealed an active felony warrant with an advisement to approach with caution, which caused the trooper to have Burgos-Delgado exit the vehicle for a patdown search and then placement into the trooper's cruiser.[2] During the patdown search, the trooper felt what he believed was a small vial. The trooper suspected what he felt contained illegal narcotics, but the trooper was by himself at that time and there was another person in Burgos-Delgado's vehicle, so he left the vial in Burgos-Delgado's pocket, intending to recover it with gloves on after the other occupant was secured.

{¶ 25} The trooper's cruiser was equipped with a dash camera and an interior camera, both of which recorded the encounter; recordings from the cameras were played for the jury. The recordings showed that after Burgos-Delgado exited his vehicle, he stood in the street and then walked to the rear of the police cruiser without incident. The recordings further showed that when Burgos-Delgado was in the rear of the police car, he moved around while his hands were cuffed and was able to retrieve the vial from his pocket and dump out the contents — a powder — onto

---

[2] After Burgos-Delgado was in the cruiser, the trooper learned that the arrest warrant was for homicide with a weapon.

the floor of the cruiser. After dumping the powder, Burgos-Delgado manipulated the powder with his feet.

{¶ 26} Meanwhile, the trooper had been occupied with the other occupant in Burgos-Delgado's vehicle. As the trooper came back to his cruiser, Burgos-Delgado began to groan as if he was in pain. The trooper testified that Burgos-Delgado had not previously acted in such a manner. The trooper had Burgos-Delgado exit the cruiser; Burgos-Delgado did so under his own power and was able to stand without incident. The trooper then directed Burgos-Delgado to get back into the cruiser.

{¶ 27} The Cleveland police arrived to take custody of Burgos-Delgado. The state trooper testified that as Burgos-Delgado was walked to the Cleveland police vehicle, he "fell to the ground with a sudden inability to walk." According to the trooper, that was the first and only time Burgos-Delgado exhibited any such problems with the use of his legs during the encounter. The trooper testified that Burgos-Delgado's vehicle was not handicap-equipped and there was nothing in the vehicle, such as a wheelchair, to indicate that Burgos-Delgado was handicapped.

{¶ 28} After Burgos-Delgado was turned over to the Cleveland police, the trooper located the broken vial Burgos-Delgado had smashed on the floor of the cruiser as well as white powder residue on the floor. The powder had snow and ice from Burgos-Delgado's shoes mixed in with it, but the trooper collected what he was able. A drug analyst with the Ohio State Highway Patrol Crime Lab tested the broken piece of glass recovered from the trooper's cruiser and determined it contained cocaine.

**Burgos-Delgado's Interview**

{¶ 29} One of the investigating detectives testified about his interview with Burgos-Delgado, which was video recorded in its entirety. Burgos-Delgado was in a wheelchair during the interview. Burgos-Delgado denied being a part of the homicide of Dowell, mainly citing his alleged inability to walk. He became emotional when he was told that he was being arrested for murder, reiterating that he could not have murdered Dowell because of his purported disability. Burgos-Delgado told the detective, "I don't even leave my house so how is this possible. I am always at home because of my handicap." He told the detective that he had been shot in the back and was paralyzed. He consented to the police swabbing for his DNA and told them that none of his DNA would be connected to the crime scene.

{¶ 30} In regard to the vehicle E.R. said Burgos-Delgado was driving on the day of the murder, Burgos-Delgado told the detective that his friends used it to drive him around. Burgos-Delgado also denied knowing Dowell and claimed he only knew Garcia-Rodriguez from when he lived in Puerto Rico; he denied being acquainted with him in Cleveland. Further, Burgos-Delgado denied that he owned a gun.

{¶ 31} The detective testified that in 2021, the police seized a cell phone from Burgos-Delgado and extracted information from it. On that phone was a video from July 5, 2021. The video was played for the jury and showed Burgos-Delgado recording himself talking to his phone. In the video, Burgos-Delgado was walking

around his house without issue. Burgos-Delgado was in a wheelchair for the December 2021 trial.

**Assignments of Error**

    I.    Defendant-appellant's conviction must be reversed due to ineffective assistance of counsel.

    II.    The trial court erred in imposing consecutive sentences.

    III.    The trial court erred in instructing the jury as to complicity.

    IV.    The trial court erred when it permitted the prosecutor to play a video of defendant-appellant that was recorded in 2021.

    V.    Counts five, six, and eight of the 2018 indictment must be merged.

**Law and Analysis**

**Ineffective Assistance of Counsel**

{¶ 32} In his first assignment of error, Burgos-Delgado contends that his trial counsel was ineffective for (1) not objecting to the joinder of the two indictments, (2) for failing to file a motion to dismiss based on a speedy trial violation, and (3) eliciting testimony from a state's witness that codefendant Garcia-Rodriguez implicated Burgos-Delgado to law enforcement.

{¶ 33} The test for an ineffective assistance of counsel claim is two-part: whether trial counsel's performance was deficient and, if so, whether the deficiency resulted in prejudice. *State v. White*, 7th Dist. Jefferson No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794

N.E.2d 27, ¶ 107.  In order to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Lyons*, 7th Dist. Belmont No. 14 BE 28, 2015-Ohio-3325, ¶ 11, citing *Strickland* at 694.  The appellant must affirmatively prove the alleged prejudice occurred.  *Strickland* at 693.

{¶ 34} As both prongs of the *Strickland* test are necessary to prove an ineffective assistance of counsel claim, if one prong is not met, an appellate court need not address the remaining prong.  *Id.* at 697.  The appellant bears the burden of proof on the issue of counsel's effectiveness, and in Ohio, a licensed attorney is presumed competent.  *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

**Joinder of Indictments**

{¶ 35} The law favors joining multiple criminal offenses in a single trial. *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991), citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).  "[J]oinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).  Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried

together, if the offenses or the defendants could have been joined in a single indictment or information."

{¶ 36} Pursuant to Crim.R. 8(A), joinder is permitted if the offenses are: (1) of the same or similar character; (2) based on the same act or transaction; (3) based on two or more acts or transactions connected together or constituting parts of a common scheme; or, (4) part of a course of criminal conduct. The defendant bears the burden of proving that the trial court abused its discretion in denying a motion to sever and the burden of proving prejudice if joinder has been granted. *State v. Moore*, 2013-Ohio-1435, 990 N.E.2d 625, ¶ 23 (7th Dist.), citing *State v. Coley*, 93 Ohio St.3d 253, 259, 754 N.E.2d 1129 (2001).

{¶ 37} A defendant may move to sever trial of joined offenses pursuant to Crim.R. 14 if he or she can establish prejudice. *Lott* at *id*. The state may counter a claim of prejudice utilizing two methods. First, the state may demonstrate that the evidence presented at trial for each offense was simple and direct. *Moore* at *id*., citing *Coley* at *id*. Failing that, the state must show that all of the evidence presented at the combined trial would have been admissible in each case if tried separately. *Id*. If the state can demonstrate that the evidence is simple and direct, then it is not required to prove the stricter admissibility test. *State v. Harris*, 7th Dist. Mahoning No. 13 MA 37, 2015-Ohio-2686, ¶ 29, citing *State v. Johnson*, 88 Ohio St.3d 95, 109, 723 N.E.2d 1054 (2000).

{¶ 38} The crimes charged in both of the two indictments against Burgos-Delgado were part of a course of criminal conduct. His crimes began on January 7,

2018, when he and Garcia-Rodriguez burglarized Dowell's home and killed him under the guise of purchasing marijuana, which they stole during the incident. Shortly after the incident, an arrest warrant was issued for Burgos-Delgado and on January 18, 2018, he was arrested on that warrant, during which he was found to be in possession of drugs that he attempted to destroy. These crimes of January 7 and January 18 were both drug related and were committed days apart. Further, the action Burgos-Delgado took of destroying the drugs with his feet during the arrest on the murder warrant was relevant to his defense in the murder case that he was disabled and could not have possibly committed Dowell's murder.

{¶ 39} Moreover, the evidence of the crimes in both indictments was simple and direct. Indeed, Burgos-Delgado concedes the simplicity of the evidence in the tampering case:

> With respect to the charges that were originally the basis of the 2020 indictment (tampering with evidence and drug possession), the facts were essentially uncontested. Defendant-Appellant was driving a vehicle that was stopped by the police, arrested on the warrant for the homicide, and while in the police cruiser, poured a vial of cocaine that was in his possession out and tried to step on the powder that was released to the floor.

Appellant's brief, p. 7.

{¶ 40} The evidence in the murder case was likewise simple and direct. E.R. testified that Burgos-Delgado shot Dowell in the head. The two spent casings at the scene were determined to have been fired by the same gun that cycled rounds of ammunition found in Burgos-Delgado's home. And although Burgos-Delgado denied being associated with Garcia-Rodriguez in Cleveland, both of their DNA,

along with Dowell's, were found on a roll of blue duct tape — with the same physical characteristics as the blue duct tape found at the crime scene — that was recovered from Burgos-Delgado's home.

{¶ 41} On this record, Burgos-Delgado has failed to demonstrate that his trial counsel was ineffective for not objecting to the joinder of the two indictments.

**Motion to Dismiss**

{¶ 42} Burgos-Delgado's second claim of ineffective assistance of counsel is based on counsel's failure to file a motion to dismiss the tampering indictment for a violation of his speedy trial rights. According to Burgos-Delgado, he was arrested on January 18, 2018, and, thus, by the time of his January 2020 indictment, his right to a speedy trial had expired. Burgos-Delgado's contention overlooks that the January 2018 arrest was not for the tampering case; rather, he was arrested on the warrant for Dowell's murder.

{¶ 43} To the extent that Burgos-Delgado's contention is that there was preindictment delay on the tampering indictment, we note that preindictment delay violates due process only when it is unjustifiable and causes actual prejudice. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. The Ohio Supreme Court has established a burden-shifting framework for analyzing preindictment delay due process claims. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). Under this framework, a defendant is first required to present evidence of actual prejudice; if actual prejudice is established, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id.*

Burgos-Delgado has not claimed, much less demonstrated, that he was prejudiced by the delay in the filing of the tampering indictment and our review of the record shows none.

{¶ 44} On this record, counsel was not ineffective for not filing a motion to dismiss.

**Testimony from Investigating Detective about Codefendant's Statement**

{¶ 45} The police apprehended codefendant Garcia-Rodriguez first. During Garcia-Rodriguez's interview with law enforcement he implicated Burgos-Delgado. As the case proceeded through the pretrial process it became apparent that Garcia-Rodriguez was not going to be a witness in this case. Thus, the defense filed a motion in limine to exclude testimony based on statements made by Garcia-Rodriguez. As grounds for the motion, the defense contended that any such testimony would be inadmissible hearsay and in violation of Burgos-Delgado's constitutional right to confront the witness. After a hearing on the motion in limine, the trial court granted the motion.

{¶ 46} At trial, upon cross-examination of the investigating detective, defense counsel elicited testimony from him that in his interview of Garcia-Rodriguez, Garcia-Rodriquez implicated Burgos-Delgado. In Burgos-Delgado's third contention of ineffective assistance of counsel, he contends that "[i]n a case involving largely scientific and circumstantial evidence, this testimony is devasting. That it was brought forth on cross-examination was ineffective and prejudicial and should be reversible error." We disagree.

{¶ 47} A review of the record demonstrates that counsel had a change of mind as to trial strategy regarding the use of Garcia-Rodriguez's statements to the investigating detective. Counsel's questioning of the detective shows that his strategy was to paint Garcia-Rodriquez as the "first suspect" in the murder of Dowell and despite him being the first suspect, Garcia-Rodriguez's home was not searched as was Burgos-Delgado's. The implication was that Garcia-Rodriguez "pinned" Dowell's murder on Burgos-Delgado. Further, defense counsel implied that the investigation was incomplete, or even "sloppy," given that neither the bag of marijuana stolen from Dowell's home nor the gun believed to be the murder weapon were recovered from Burgos-Delgado's home, but Garcia-Rodriguez's home was never searched.

{¶ 48} Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. A court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. *Id.* at 690. For matters "within the ambit of trial strategy," ineffective assistance is not demonstrated by "debatable trial tactics." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 45 (additional citation omitted).

{¶ 49} On this record, we do not find counsel's performance deficient. Further, Burgos-Delgado has failed to demonstrate prejudice; that is, that the result

of the trial would have been different without the testimony. The forensic, direct, and circumstantial evidence overwhelmingly supports the conviction. We therefore find no merit to his third contention of ineffective assistance of counsel.

{¶ 50} The first assignment of error is overruled.

**Consecutive Sentences**

{¶ 51} On the homicide charges, the trial court sentenced Burgos-Delgado to life without parole, plus three years on the firearm specification on Count 1, aggravated murder, and ten years on the remaining counts after merger, to be served consecutively to each other. The trial court further ordered that the gun specification on Count 7 be served consecutive to the gun specification on Count 1. The court did not make consecutive-sentence findings either at the hearing or in its journal entry.

{¶ 52} In his second assignment of error, Burgos-Delgado contends that the trial court erred in imposing consecutive sentences without making the statutory findings. Burgos-Delgado concedes that in *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, this court held in similar circumstances as presented in this case that the issue of consecutive-sentence findings is "moot" because it is purely "academic" given the imposition of a sentence to life without the possibility of parole. *Id.* at ¶ 7; *see also State v. Chavez*, 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, and *State v. Herrington*, 8th Dist. Cuyahoga No. 106225, 2018-Ohio-3049. Burgos-Delgado asks us to reconsider this court's holding in *Campbell* because "[i]t is at least possible that at some date in the future, the Legislature may

provide potential relief for those serving sentences of life without the possibility of parole * * *." We decline to do so.

{¶ 53} Thus, following this court's precedent, the second assignment of error is overruled.

**Complicity Instruction**

{¶ 54} The trial court instructed the jury, over the defense's objection, in relevant part as to the homicide case, that "[i]t is the contention of the State that the defendant either committed the offenses charged in the indictment or that he aided and abetted the person who did directly or personally [commit] the offense."

{¶ 55} In his third assignment of error, Burgos-Delgado contends that "the instruction should not have been given as the State's theory of the case was that Defendant-Appellant was the principal offender." He argues that "[b]y allowing the jury to consider a complicity theory which was not part of the indictment in this case nor presented as evidence to the jury, the opportunity for jury confusion was present and there was no need for it given the State's theory of the case."

{¶ 56} The giving of jury instructions is within the sound discretion of the trial court, and we review it for an abuse of discretion. *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 42, citing *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35, and *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993).

{¶ 57} Under R.C. 2923.03(F), a charge of complicity may be stated in terms of this section or in terms of the principal offense. As a result, a jury instruction on

complicity is proper as long as "the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 244.

{¶ 58} Here, although the state contended that Burgos-Delgado was the principal offender in the homicide case and E.R.'s testimony supported that theory, other evidence could have supported a complicity theory. Namely, the other witness at the murder scene, Alley, testified that she saw a struggle and heard gunshots, but she did not testify as to who fired the shots. On this record, the jury could have found Burgos-Delgado guilty as an accomplice and, therefore, the trial court did not abuse its discretion in instructing the jury on complicity.

{¶ 59} The third assignment of error is overruled.

**Playing of 2021 Video Taken by Burgos-Delgado**

{¶ 60} Over the defense's objection, the state played a video Burgos-Delgado made of himself in July 2021. In the video, Burgos Delgado is walking around his residence. Burgos-Delgado contends that the video, taken in 2021, was not relevant to his physical status at the time of the homicide, which occurred in 2018. Moreover, even if it had probative value, according to Burgos-Delgado, the probative value was outweighed by its prejudicial nature.

{¶ 61} Generally, all relevant evidence is admissible. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Under Evid.R. 403(A), '[a]lthough relevant,

evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 122, quoting *State v. Maag*, 3d Dist. Hancock Nos. 5-03-32 and 5-03-33, 2005-Ohio-3761, ¶ 71.

{¶ 62} However, "Evid.R. 403(A) does not 'attempt to bar all prejudicial evidence.'" *State v. Scurlock*, 6th Dist. Lucas No. L-5-1200, 2017-Ohio-1219, ¶ 32, quoting *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. "Instead, the rule provides that only *unfairly* prejudicial evidence is excludable." (Emphasis sic.) *Scurlock* at *id.*, citing *Crotts* at *id.*

> "'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.'"

*Crotts* at ¶ 24, quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 171, 743 N.E.2d 890 (2001), quoting Weissenberger, Ohio Evidence, Section 403.3, at 85-87 (2000).

{¶ 63} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

{¶ 64} The trial court reasoned as follows in allowing the state to present the video:

> We are at the end of a journey that began on January 7th, 2018, and the visual that the defendant wants to produce is that he is wheelchair bound. And as [the assistant prosecuting attorney] indicated, he has been in a wheelchair every day during the course of the trial, the inference being that he is incapacitated.
>
> We have already seen some video where he's able to leave the wheelchair. And the next question is, could he have done this crime? And I think that the video from 2021 is relevant because it shows that the condition, which is being inferred, is not permanent, and that the defendant has the ability to be mobile at such times he deems necessary.

Tr. 895-896.

{¶ 65} We find no abuse of discretion on this record. The record shows that Burgos-Delgado's claim of a physical disability dated back to 2018. Specifically, when he was stopped by police for a traffic violation days after Dowell's murder, Burgos-Delgado acted in a manner suggestive of having a physical impairment that interfered with him walking. Further, when Burgos-Delgado was interviewed by law enforcement about Dowell's murder he claimed that he could not have been involved because of his physical disability. At his December 2021 trial, Burgos-Delgado sat in a wheelchair, the inference being that he had a physical impairment that made it difficult or impossible to walk. Thus, the 2021 video was relevant and it was not unfairly prejudicial.

{¶ 66} The fourth assignment of error is overruled.

**Merger**

{¶ 67} At sentencing, the state stated that Counts 5, 6, and 8 of the murder case should merge. The trial court agreed and did not sentence on those counts. However, the court's initial sentencing entry did not reflect the merger. For his final assignment of error, Burgos-Delgado requests that we order the trial court to issue a corrected sentencing entry.

{¶ 68} After the briefs were filed in this appeal, this court remanded the case to the trial court for the limited purpose of the court issuing a new sentencing entry reflecting the merger. *See* motion No. 561727 (Feb. 6, 2023). The trial court complied with this court's mandate and issued a nunc pro tunc sentencing entry on February 22, 2023.

{¶ 69} In light of the above, the fifth assignment of error is overruled as moot.

{¶ 70} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure

_____
MICHAEL JOHN RYAN, JUDGE

ANITA LASTER MAYS, A.J., and
MARY EILEEN KILBANE, J., CONCUR