**[Cite as *State v. Mack*, 2023-Ohio-4374.]**

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-T-0029** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DARRL A. MACK, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 00680 |

## O P I N I O N

Decided: December 4, 2023
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Eric M. Levy*, 55 Public Square, Suite 1600, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Darrl A. Mack, appeals his convictions and sentence on multiple counts of Rape and Gross Sexual Imposition. For the following reasons, his convictions and sentence are affirmed.

{¶2} On September 1, 2022, the Trumbull County Grand Jury returned an Indictment charging Mack with three counts of Rape (Counts 1-3), in violation of R.C. 2907.02(A)(1)(b) and (B) with factual findings pursuant to R.C. 2971.03(B)(1)(b) ("the victim was less than ten years of age") and (c) ("the offender purposely compels the victim

to submit by force or threat of force"); two counts of Gross Sexual Imposition (Counts 4-5), felonies of the third degree in violation of R.C. 2907.05(A)(4) and (C)(2); and one count of Gross Sexual Imposition (Count 6), a felony of the third degree in violation of R.C. 2907.05(B) and (C)(2).

{¶3} The case was tried before a jury on March 20-21, 2023. The following testimony and evidence were presented:

{¶4} C.C. testified that she is the mother of three daughters: J.C., Z.B., and N.B. In 2021, they were living in an apartment in Warren, Ohio. Mack is her cousin. At around the third week of March 2021, Mack came to reside in C.C.'s apartment, sleeping on a couch in the living room. There was an arrangement that Mack (who was unemployed) would watch the daughters while C.C. was at work. The children were expected to listen to and mind him and do what he said. About a month later, C.C. paid for Mack to stay in another apartment. Mack would still on occasion spend the night at C.C.'s apartment and spend time with the daughters. During this time, C.C. noticed changes in her daughters' demeanors. The oldest wanted to always stay with her dad rather than be at home. The middle daughter became sad and more attached to her, wanting to sleep with her rather than in her own room.

{¶5} C.C. further testified that, on July 5, 2021, a neighbor (Annie May Fitzpatrick) and her children made accusations about Mack. C.C. confronted Mack with the daughters present but Mack did not respond to the allegations made by the children. He did admit to having an improper conversation with J.C. about virginity. A few days later (July 9), C.C. filed a police report. She dropped the matter when Mack moved out of the area. When Mack returned to Warren and tried to resume contact with her and/or

2

when one of the daughters' teachers reported the matter to Children's Services, C.C. again pursued charges with the police. At this time (February 2022), the daughters were taken to Akron Children's Hospital in Boardman for examination.

{¶6} N.B. testified that she was age four in the spring of 2021 when Mack lived on their couch. During this time, "he spit on his finger and put it in my middle part" on more than one occasion. It made her feel uncomfortable. N.B. could not or would not directly identify her "middle part." She indicated that it was covered by her pants as were her butt, legs, and knees. The "middle part," however, was not her butt.[1]

{¶7} Z.B. testified that she was age six in the spring of 2021. While Mack was living with her family, "he put his finger in [her] underwear" over her "middle part" (where she pees). Mack also touched her butt (over her clothes). And Mack touched her chest with his hand. On another occasion, Z.B. watched Mack play "mom and dad" with N.B. Mack was the dad and N.B. the mom. Mack pulled his pants down "a little bit" and N.B. sat on top of him with her pants down "a little bit." There were other occasions when Mack showed neighbor children his middle part. Z.B. testified that she did not tell her mother what Mack had done "because I was scared that he was gonna hurt me." Mack told her not to tell and that "snitches get stitches."[2]

{¶8} J.C. testified that she was age eight to nine in the spring of 2021. J.C. did not like having Mack living in their apartment because "he would usually touch us in weird type[s] of places" such as when "he was rubbing on my back and he was trying to get into my pants." He told her that he was thinking of taking her virginity. Once while Mack was

---

1. The conduct involving N.B. is the basis for Count 3 of the Indictment, Rape.
2. The conduct involving Z.B. is the basis for Counts 4-6 of the Indictment, Gross Sexual Imposition.

helping J.C. practice spelling she noticed that his hand was in his pants and he was playing with himself. J.C. saw Mack put a sleeping N.B. on his stomach and begin rubbing on her. Another time, J.C. and her sisters were dancing around right before bed and Mack made the comment, "this is why I touch little girls, because they got stuff on that they shouldn't be wearing in front of me."

{¶9} J.C. recalled a particular occasion when she and Mack were watching a movie together. Mack was touching her and "he got into my panties and was touching me skin-to-skin * * * on my private part" and he went inside her. She was very uncomfortable and kept "pushing him off" until she went to her room. She testified about another particular occasion when "he got in there [i.e., into her vagina]."[3]

{¶10} J.C. further testified that she and her sisters were trying to tell their mother what he was doing but they were scared. Mack had previously shown her a gun and told her "that if I told anybody that he was touching on me or my sisters that he was gonna kill me." Mack made another similar threat that he would kill her and her family if she told anyone.

{¶11} Monique Malmer testified that she is a certified nurse practitioner in the Child Advocacy Center at the Akron Children's Hospital in Boardman. The Advocacy Center performs physical and sexual abuse examinations for medical purposes. In February 2022, J.C., Z.B., and N.B underwent sexual abuse evaluations. Part of the examination process included a medical diagnostic interview with the child. This interview was conducted by a social worker with Trumbull County Children Protective Services and

---

3. The conduct involving J.C. is the basis for Counts 1-2 of the Indictment, Rape.

Case No. 2023-T-0029

was observed by Malmer through a one-way mirror and recorded. Following the interview, Malmer conducted a physical examination of the children.

{¶12} The jury found Mack guilty on all charges.

{¶13} Following a sentencing hearing on April 17, 2023, the trial court sentenced Mack as follows: Counts 1 and 2 (Rape), concurrent sentences of life in prison without the possibility of parole; Count 3 (Rape), a consecutive sentence of life in prison without the possibility of parole; Count 4 (Gross Sexual Imposition), a consecutive sentence of sixty months in prison; and Counts 5 and 6 (Gross Sexual Imposition), concurrent sentences of sixty months in prison. Mack's aggregate prison sentence was two life sentences plus five years.

{¶14} On April 21, 2023, Mack filed a Notice of Appeal. On appeal he raises the following assignments of error:

> [1.] The trial court erred and abused its discretion when it allowed over objection alleged hearsay statements made by the victims regarding the acts alleged herein to a non-testifying social worker through witness Monique Malmer which were testimonial and investigatory.
>
> [2.] Appellant's convictions must be vacated with appellant acquitted of all charges as the convictions were not supported by sufficient evidence.
>
> [3.] Appellant's convictions must be vacated as being against the manifest weight of the evidence presented with the case remanded for a new trial.
>
> [4.] The trial court abused its discretion when it gave an *in loco parentis* instruction on the force element.
>
> [5.] Appellant was denied his Sixth Amendment right: he received ineffective assistance of trial counsel.
>
> [6.] The sentences of life in prison without parole imposed upon appellant in Counts One, Two and Three are contrary to law.

5

Case No. 2023-T-0029

[7.] The trial court committed plain error when it failed to merge Counts Four, Five and Six as allied offenses.

[8.] The trial court erred and abused its discretion when it precluded testimony that victim J.C.'s father was convicted of Rape.

[9.] The trial court did not make all findings required to impose consecutive sentences and consecutive sentencing is not supported by the record.

{¶15} The assignments of error will be considered out of order.

{¶16} The first and eighth assignments of error challenge evidentiary rulings by the trial court. As such, these rulings are reviewed for an abuse of discretion: "a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). However, a trial court "does not have the discretion to admit evidence that is clearly not permitted by law * * * such as whether testimony constitutes hearsay." *State v. Davis*, 11th Dist. Lake No. 2019-L-170, 2021-Ohio-237, ¶ 133. In such cases, the lower court's evidentiary ruling is reviewed de novo. *Id.*

{¶17} Under the first assignment of error, Mack contends that it was error for the trial court to admit Monique Malmer's testimony regarding the interview with the children conducted by Kelly Watson pursuant to the hearsay exception for statements made for purposes of medical diagnosis and treatment. According to Mack, these interviews were testimonial and investigatory in nature inasmuch as they took place about a year after the alleged sexual abuse.

{¶18} Ohio Evidence Rule 803 provides that statements made for purposes of medical diagnosis or treatment "are not excluded by the hearsay rule, even though the

6

Case No. 2023-T-0029

declarant is available as a witness." The exception is applied to the following: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). The Staff Notes further provide: "The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted."

{¶19} In applying Evidence Rule 803(4) to a child's statements, the Ohio Supreme Court has stated that the issue is "whether [the] statements were made for purposes of diagnosis and treatment rather than for some other purpose." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 47. "The trial court's considerations of the purpose of the child's statements will depend on the facts of the particular case." *Id.* at ¶ 49. "[A]fter considering the circumstances surrounding a child victim's statements," the court "retains the discretion to admit the testimony." *Id.* at ¶ 48. "[T]he fact that information gathered for medical purposes is subsequently used by the state does not change the fact that the statements were made for medical diagnosis and treatment." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 43.

{¶20} In the present case, the children underwent a sexual abuse evaluation at the Child Advocacy Center which is part of the Akron Children's Hospital. The Center is staffed by a "multidisciplinary team" which may include, in addition to medical personnel, law enforcement and child protective services. Upon arrival, a nurse takes the children's vital signs and performs basic triage while medical information is obtained from the

7

mother. Malmer testified: "They [the children] know they're there for a checkup. That's explained to them during triage."

{¶21} The children then underwent a medical diagnostic interview with a social worker (Watson) from Trumbull County Children Protective Services. The interview was conducted by Watson alone with each child separately. These interviews are recorded "in [the] hopes that the child doesn't have to talk about it again." For like reason, the interviews are observed by other team members through a one-way mirror. Malmer explained: "I watch for medical purposes and the multidisciplinary team member will watch for their purposes. * * * Because I do conduct an examination after the medical diagnostic interview * * * learning any pertinent medical history is important to conduct the [physical] exam, whether they have current medical concerns, past medical concerns, so that during my medical examination if I find any physical findings during the examination, whether it's related to the history or not, I can address those appropriately." In the present case, the medical diagnostic interviews were also observed by Detective Carney.

{¶22} From the children's mother, Malmer learned that it was initially believed that the children had only been touched "over the clothing." More recently, it was learned that "under-the-clothing touching" may have occurred and it was this concern that prompted the evaluation. The children identified Mack as their abuser.

{¶23} Malmer noted that J.C. [age nine at the time of the interview] appeared nervous during the interview and that they talked "about the touching being under her clothing and touching her chest and her butt." At some point, J.C. ceased to participate by responding, "I don't remember." During her interview, Z.B. [age seven at the time of the interview] "talked about being touched in her private area over and under her clothing,"

8

including her nipples. N.B. [age five at the time of the interview] described "the touching to her vagina" which she referred to as her "middle part." N.B. said that Mack would put his fingers in his mouth and lick them before touching her. She indicated that it felt "wet" and she "didn't like it." Malmer commented: "that description for me, in my experience, hearing that from her, with the fingers in the mouth and touching the vagina and she said he did that * * * over and over again, that paints the picture that that was repeated touching and it was allowed to be repeated because the lubrication reduced the level of discomfort that somebody would feel with that type of touching."

{¶24} None of the children showed signs of injury or abuse. Malmer explained that this was not unexpected given the amount of time that had passed since the abuse occurred and the nature of the abuse. She further noted that hymenal tissue regenerates and, even if injured, may heal with scarring or other indications of tearing.

{¶25} We find no issues with Malmer's testimony with respect to the statements made by the children to Watson during the medical diagnostic interview. The evaluation took place at a medical facility. The children were duly advised that they would be having a checkup and did undergo a medical examination. To the extent that the children's statements during the interview related to medical diagnosis and treatment, they were admissible. The Supreme Court of Ohio has affirmed and reaffirmed that "'the identity of the perpetrator, the age of the perpetrator, the type of abuse alleged, and the time frame of the abuse'" fall within the scope of the hearsay exception. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 143, citing *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 32; *State v. Sims*, 2023-Ohio-1179, 212 N.E.3d 458, ¶ 78 (4th Dist.) ("statements that identify a defendant as the perpetrator of a crime,

9

where the defendant touched the victim, and how sexual contact occurred ordinarily are statements obtained for medical diagnosis and treatment"). The statements testified to by Malmer fall securely within these parameters.

{¶26} Mack maintains, to the contrary, that the statements were investigatory and testimonial: "The children knew they were taken to interview about the incident herein with Appellant for additional information gathering after the first investigation was closed and it was reopened once J.C.'s school found out about the allegations. They knew the exam, a year after the alleged incidents[,] was not for medical purposes and was being watched by police who got to submit questions. They were improperly encouraged to give specific answers and the testimony given was an interpretation of the answers by an individual who did not herself conduct the interview." Appellant's Brief at 7. None of these points undermine the admissibility of Malmer's testimony.

{¶27} First, the claim that the examination was not for medical purposes is not supported by the record. Until the examination at the Child Advocacy Center, the children had not undergone any medical examination in relation to sexual abuse. The propriety of conducting a medical examination in these circumstances is not obviated merely because physical indications of abuse are unlikely or unexpected. Granted that there may not have been any immediate medical concerns, diagnostic evaluation was still necessary to test for sexually transmitted and venereal disease. For the purposes of the Rule, moreover, the term "'medical diagnosis' * * * includes a mental health diagnosis" in addition to treatment for physical injury. *State v. O.E.P.-T.*, 2023-Ohio-2035, 218 N.E.3d 237, ¶ 170 (10th Dist.). In the present case, Malmer referred all three children for trauma-focused cognitive behavioral therapy.

10

Case No. 2023-T-0029

{¶28} Nor does the fact that Detective Carney observed the interview and was able to request that Watson ask certain questions negate the medical purpose of the examination. In *Arnold*, the Supreme Court of Ohio expressly recognized the dual-nature of the sexual abuse evaluations conducted by child-advocacy centers. The diagnostic interview conducted by Watson may serve both "to gather forensic information to investigate and potentially prosecute a defendant for the offense" and also "to elicit information necessary for medical diagnosis and treatment of the victim." *Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, at ¶ 33. The fact that portions of the interview may have had an investigatory purpose does not mean that other portions did not have a medical purpose. *Id.* ("[t]he interviewer acts as an agent of each member of the multidisciplinary team"). Accordingly, the admissibility of the statements depends on the context in which the statements were made. *Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, at ¶ 48. It is not the case, then, that the content of a diagnostic interview must be wholly admissible or wholly inadmissible. *Arnold* at ¶ 37 ("[a]lthough the statements obtained during Marshall's interview of M.A. that related primarily to the state's forensic investigation are testimonial and thus inadmissible * * *, other statements provided information that was necessary to diagnose and medically treat M.A. [and thus were admissible]"); *State v. Ball*, 10th Dist. Franklin No. 07AP-818, 2008-Ohio-2648, ¶ 21 ("the fact that other people, including a detective [from a law enforcement agency], watched the interview in real time did not change the purpose of the interview") (citation omitted). Here, as noted above, the statements testified to by Malmer did relate to medical diagnosis and treatment and, therefore, were admissible despite the presence and possible involvement of Detective Carney.

11

{¶29} Lastly, Mack contends that Malmer's testimony was inadmissible because the children were encouraged to make statements implicating him. After describing their abuse, Z.B. was told "good job" and N.B. was given a high five. Mack's concerns that the children were improperly influenced by the manner in which the interviews were conducted is relevant to the credibility of their statements rather than their admissibility. Whatever inducements were given to the children for recounting the abuse was not related to the purpose of the interview. Be that as it may, counsel for Mack was provided with the recordings of the interviews as well as Malmer's reports and so was able to explore the issue of improper influence through cross-examination of not only Malmer but the children themselves. As explained by Malmer, some degree of encouragement or coaxing is necessary before children will typically discuss sexual abuse at all: "When disclosures come out of children and when they start to talk about those - - experiences of abuse, they will provide what we call incremental disclosures often initially to see what type of reaction they're going to get. Is the person they're telling going to be supportive? Are they going to believe what I'm saying? How are they going to react to that? And depending on the response they get from the person they're reporting it to often will dictate how much more they're going to disclose. So if they get a positive reaction, in that somebody is going to be supportive and not mad at them or be upset or angry, they often will continue to disclose. Or they'll start with a little bit and then they'll wait to see what the reaction is." Concern with the reliability of statements made by children of such young ages as these children is legitimate, but is not grounds for excluding otherwise admissible statements made for the purpose of medical diagnosis and treatment.

{¶30} The first assignment of error is without merit.

12

{¶31} In the eighth assignment of error, Mack argues the trial court abused its discretion by preventing him from questioning witnesses regarding J.C.'s father's conviction for sexual abuse involving a minor. There was testimony in the record that J.C. was familiar with the term "rape" and that it could result in a person being "locked up."

{¶32} C.C. (the mother) testified on cross-examination that J.C. would on occasion spend the night with her father, Darnell Williams, who lived in Youngstown and that Williams attended a birthday party for J.C. in April 2021 but was currently incarcerated. When counsel for Mack inquired into the cause of Williams' incarceration, sexual abuse involving a minor, the trial court upheld an objection on the grounds of relevance. Later, the court struck the question put to C.C. whether she informed Watson that J.C.'s father was incarcerated for the rape of an eleven-year-old. During the cross-examination of Malmer, counsel for Mack attempted to inquire about Williams as his conviction was part of the social history contained in Malmer's written report (not otherwise admitted into evidence). Counsel for Mack was dissuaded from doing so after the court advised that it would "open the door" for the State to discuss other parts of the report prejudicial to Mack.

{¶33} Mack asserts that testimony about Williams' incarceration was relevant to demonstrate an alternative explanation of J.C.'s sexual knowledge: "It was not elicited to show a sex act involving any victim herein which might be protected by rape shield but instead to demonstrate how the victims might have known what rape was and what the consequences might be for someone alleged to have committed the same." Appellant's Brief at 28.

13

{¶34} We find the trial court properly foreclosed inquiry into Williams' criminal history on the grounds of relevance. It has been recognized that "evidence of prior sexual abuse to a victim, who is a child of tender years, may be admissible for the defense to show the source for the child's sexual knowledge." (Citation omitted.) *State v. Murphy*, 8th Dist. Cuyahoga No. 107836, 2019-Ohio-4347, ¶ 97; *State v. Kenney*, 10th Dist. Franklin No. 09AP-231, 2010-Ohio-3740, ¶ 20 ("[t]hrough the evidence of a child's prior sexual abuse, the defendant attempts to exonerate himself by showing that the child's sexual knowledge was attributable to another person's misconduct"). Generally, there must be "clear proof" of other sexual abuse by someone other than the defendant for such evidence to be admitted. (Citation omitted.) *State v. King*, 12th Dist. Warren No. CA2018-04-047, 2019-Ohio-833, ¶ 24. Here, Mack is not suggesting that J.C.'s sexual knowledge came from sexual abuse by her father, but, rather, from a familiarity with the facts of her father's conviction for child molestation.

{¶35} In order to find the trial court's ruling an abuse of discretion, there would have to be some indication in the record of the facts underlying the charges against Williams demonstrating a similarity with the accusations made against Mack, and some indication that J.C. was aware of the facts of her father's case. There is evidence of neither in the record. J.C. may have become aware of rape as a punishable crime because of her father's incarceration, but, without more, one cannot infer from this a knowledge of the specific acts of penetration such as she accused Mack of performing. Moreover, Mack is not seeking to exonerate himself by demonstrating that J.C.'s knowledge is attributable to another, but is suggesting that J.C. fabricated the abuse entirely, i.e., that no abuse occurred. As noted, no foundation was laid for pursuing this

14

course of inquiry. But the likelihood of such being the case is negated by the allegations of abuse by J.C.'s sisters (unrelated to Williams) and the fact that Mack's misconduct was first disclosed by children outside J.C.'s home. Accordingly, the court was well within its discretion to foreclose inquiry into Williams' crimes.

**{¶36}** The eighth assignment of error is without merit.

**{¶37}** In his fifth assignment of error, Mack alleges the ineffective assistance of trial counsel.

**{¶38}** "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000). With respect to counsel's performance, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the element of prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

**{¶39}** In the present case, Mack claims trial counsel was ineffective for revealing to the jury that he had previously been convicted of robbery. During opening statements,

15

counsel for Mack told the jury: "The allegation that [J.C.] made * * * was that someone had touched her in November of 2020. That could not have been Mr. Mack because Mr. Mack was in jail. You'll hear evidence to that effect." On the contrary, the accusations against Mack were alleged to have occurred in the spring of 2021 (as stated in the prosecution's opening statement). Counsel also stated that, at the age of sixteen, Mack "made a huge mistake" and "committed a robbery" for which he was "sent to prison for eight years." Finally, during the cross-examination, counsel asked J.C. if she knew that Mack had been "locked up." J.C. responded that the prosecutor had told her not to talk about it. Counsel withdrew the question.

{¶40} Although trial counsel unnecessarily introduced the fact of Mack's robbery conviction into the proceedings, we do not find the error so serious as to render his convictions unreliable. First of all, the references to Mack's conviction were cursory and unsubstantiated. Counsel's claim that the evidence would show that Mack was incarcerated for robbery at the time of the alleged molestation was unfulfilled. No evidence of the robbery conviction was ever introduced and, but for a single question during J.C.'s cross-examination, the issue was not raised again. Additionally, the jury was duly advised that statements made during opening arguments are not evidence. Assuming that the jury took counsel's statements as fact, a prior robbery conviction had no real relevance to the Rape and Gross Sexual Imposition charges being tried. It is very doubtful that the jury would have considered the robbery when weighing the credibility of the children's testimony on which Mack's present convictions are based or presumed that, because Mack had committed a robbery, he was likely to have molested these girls. *Compare State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 177

16

("[e]rror in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction") (citation omitted).

{¶41} The fifth assignment of error is without merit.

{¶42} In the fourth assignment of error, Mack argues the trial court erred by instructing the jury that, for the purposes of the element of "force" in R.C. 2971.03, the jury could find that Mack acted in loco parentis.[4]

{¶43} "A trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus; *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E3d 1147, ¶ 5 ("jury instructions 'must be given when they are correct, pertinent, and timely presented'") (citation omitted). "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" (Citation omitted.) *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135.

{¶44} In the present case, the trial court gave the following jury instruction on the force of a parent or other authority figure also known as in loco parentis: "'Force' means any violence, compulsion or constraint physically exerted by any means upon or against

---

4. The element of "force or threat of force" only applied to the two counts of Rape involving J.C. and the single count of Rape involving N.B.

17

any person or thing. When the relationship between the victim and the defendant is one of child and parent or other authority figure, the element of force need not be openly displayed or physically brutal. It can be subtle or slight and psychological or emotionally powerful. Evidence of an express threat of harm or evidence of significant physical restraint is not required. If you find beyond a reasonable doubt that under the circumstances and evidence the victim's will was overcome by fear, duress, or intimidation, the element of force has been proved." *Compare State v. Dye*, 82 Ohio St.3d 323, 695 N.E.2d 763 (1998), syllabus ("[a] person in a position of authority over a child under thirteen may be convicted of rape of that child with force * * * without evidence of express threat of harm or evidence of significant physical restraint") and 327 ("[f]orce need not be overt and physically brutal, but can be subtle and psychological," "[a]s long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established") (citations omitted).

{¶45} Mack does not take issue with the substance of the instruction. Rather, Mack contends the instruction was misleading because the trial court did not expressly advise the jury that it had to find that he was an authority figure before applying the lessened standard of "force." "No instruction was given requiring the jury to find if Appellant was a parent or authority figure or otherwise defining [the] same." Appellant's Brief at 19. We disagree. The trial court's instruction fairly advised the jury that force may be psychological or emotional rather than physical "[w]hen the relationship between the victim and the defendant is one of child and parent or other authority figure." The language employed is conditional and does not presuppose that Mack was an authority figure to the children. Nor was the court required to define "authority figure." "[T]erms of

18

common usage * * * need not be defined for the jury." (Citation omitted.) *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 106. Here, the phrase "parent or other authority figure" indicates someone in a position of authority with respect to the victims akin to that of a parent. The concept of parental authority is one of common understanding. It is not defined in the statutes and has no special or technical meaning that would require explanation for the jury. *State v. Miller*, 2d Dist. Clark No. 2022-CA-58, 2023-Ohio-2508, ¶ 81 (where the "statute did not define the terms in question, the trial court did not abuse its discretion by failing to provide definitions for those terms in the jury instructions").

{¶46} Mack also argues under this assignment of error that the in loco parentis instruction was not justified by the facts of the case. "[T]hese [alleged] incidents happened generally when [the mother] was home and the short relationship with Appellant, a mere couch guest, does not rise to the level of the relationship between parent and child." Appellant's Brief at 19. On the contrary, "an adult need not be the child's parent in order to establish that the child felt obligated to obey him." *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, ¶ 55 (7th Dist.). The Supreme Court of Ohio has stated expressly, "[w]hen parents tell their children that the caregiver is in charge and that the children should mind the caregiver, that caregiver occupies the same position of authority as the parent traditionally would." *Dye* at 329. That is a fair description of the relationship Mack had with the children. He was their caregiver while the mother was at work and the children were expected to mind or obey him. We find no abuse of discretion in the trial court's provision of an instruction on the force of a parent or other authority figure.

19

{¶47} The fourth assignment of error is without merit.

{¶48} In the second and third assignments of error, Mack challenges the sufficiency and the manifest weight of his convictions respectively. These assignments will be considered jointly.

{¶49} A challenge to the sufficiency of the evidence raises the issue of "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165; Crim.R. 29(A) ("[t]he court * * * shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction"). In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. As sufficiency raises a question of law, the question of whether there was sufficient evidence to sustain a conviction is reviewed de novo. *State v. Smith*, 167 Ohio St.3d 220, 2022-Ohio-269, 191 N.E.3d 418, ¶ 5.

{¶50} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way

20

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Barnes*, 11th Dist. Trumbull No. 2022-T-0061, 2023-Ohio-353, ¶ 43.

{¶51} In order to convict Mack of Rape as charged in Counts 1 to 3, the State was required to prove beyond a reasonable doubt that he "engage[d] in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age." R.C. 2907.02(A)(1)(b). "Sexual conduct" is defined, in relevant part, as, "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another." R.C. 2907.01(A). "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶52} Relative to all three Rape charges, Mack argues the State failed to produce evidence of "lack of privilege." Appellant's Brief at 9. We disagree. The State presented evidence of the children's ages which precludes any possibility of consent. *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, 950 N.E.2d 528, ¶ 27 ("children under the age of 13 are legally incapable of consenting to sexual conduct"). The State also presented evidence that Mack was unemployed and charged with watching the children while their mother was at work, precluding any possible medical justification for the insertion of his fingers. *State v. Haywood*, 8th Dist. Cuyahoga No. 78276, 2001 WL 664121, *2 ("the

21

privilege clause excludes conduct such as medical examinations from the definition of sexual conduct"). Such is sufficient to demonstrate the lack of privilege.

{¶53} With respect to Count 2 involving J.C., Mack argues that there was insufficient evidence of insertion into the vagina. J.C. testified as follows regarding this incident: "My sisters had ended up wanting to go to * * * their dad's house up the street. * * * [S]o my mom walked 'em. * * * I ended up * * * laying down on the bed watching my phone. Then [Mack] came in there. Then [he] started putting his hands in my pants and my panties, trying to touch my vagina again. And then my mom came. Like, my mom was run down the street [sic]. She came in the house. And then he hurried up and took his hand out. And he was, like, walking to my mom's room like nothing happened." J.C. was later asked: "And you said he was trying to touch your vagina?" She responded: "No, he got in there." She was asked again, "oh, he got in there?" and responded, "yeah." Mack maintains "[t]hat this testimony provides sufficient evidence of a possible touching of the vagina with hands under J.C.'s panties but not insertion into the vagina." Appellant's Brief at 10. We disagree. "In there" clearly refers to J.C.'s vagina and not her panties. She was asked if he was "trying to touch her vagina" and she replied, "no, he got in there." The inference that this means insertion into her vagina is unequivocally reasonable.

{¶54} Mack contends the Rape charges involving J.C. are against the weight of the evidence because J.C. testified that she never liked him ("because he had a weird vibe") and because she did not disclose that Mack had penetrated her to Watson during the diagnostic interview. While these are considerations that a jury may weigh when evaluating the evidence, they hardly compel the conclusion that J.C. fabricated the

22

allegations against Mack. *State v. Steible*, 9th Dist. Lorain No. 21CA011787, 2023-Ohio-281, ¶ 20 ("[m]any courts have determined that inconsistencies in the statements of children regarding sexual conduct do not render judgments against the manifest weight of the evidence; jurors may simply take note of such inconsistencies and resolve or discount them accordingly").

{¶55} With respect to Count 3 involving N.B., Mack argues that her testimony was insufficient to show sexual conduct. "[I]t was extremely clear that N.B. was merely reciting something and could not identify if she was merely touched or if there was insertion or where her 'middle part' is even located on her body." Appellant's Brief at 11. N.B. testified that Mack "spit on his finger and put it in my middle part." She was asked later, "you said [Mack] licked his finger and put it inside your middle part?" and answered, "yea." It made her feel uncomfortable. N.B. would not point to her "middle part" because she was embarrassed. She said it was covered by her pants but was not her butt. Malmer observed that N.B.'s description of Mack repeatedly licking his fingers and putting them in her middle part was indicative of penetration: "And [the hymen] it's not supposed to, prepuberty, be penetrated. * * * [I]t would require lubrication to be touched and penetrated, if at all, because of the nature of a prepubescent hymen."

{¶56} We find the foregoing sufficient to prove sexual conduct, i.e., that Mack digitally penetrated N.B.'s vaginal opening. "The insertion of a finger into another person's vaginal opening – digital penetration – is 'sexual conduct.'" *State v. Sanchez-Sanchez*, 2022-Ohio-4080, 201 N.E.3d 323, ¶ 120 (8th Dist.). Moreover, "although not defined by the Ohio Revised Code, it is generally well established that penetration of the victim's 'vaginal opening' has occurred where there was some forceful spreading of the

23

external female genitalia, or vulva, which is comprised of lip-like folds of skin called the labia majora." *State v. Zamora*, 12th Dist. Clermont Nos. CA2022-10-060 and CA2022-11-071, 2023-Ohio-1847, ¶ 9; *State v. Sanchez*, 11th Dist. Ashtabula No. 2018-A-0097, 2020-Ohio-5576, ¶ 51 (evidence of "digital insertion within the vulva or labia" constitutes "sexual conduct" rather than "'sexual contact' involving the touching of the outside of the labia"). Accordingly, any contact (whether or not there was actual penetration) with the hymen would be sufficient to constitute "sexual conduct" inasmuch as contact necessarily occurs past the vulva. Here, N.B. testified that Mack "put [his finger] in my middle part" and that he lubricated his finger when doing so. Malmer explained why lubrication would be necessary for touching or penetrating the hymen. This evidence is not only sufficient, but also competent and credible evidence that Mack inserted his finger into N.B.'s vaginal opening. *State v. Remy*, 2018-Ohio-2857, 117 N.E.3d 916, ¶ 155 (2d Dist.) ("[c]ourts have found sufficient evidence where a witness or victim stated that the defendant's penis or other objects were 'in' or 'inside' the victim's vagina"); *compare State v. Arcuri*, 11th Dist. Trumbull No. 2015-T-0123, 2016-Ohio-8254, ¶ 69 ("[t]hat it was Arcuri's intention to penetrate L.H. digitally is evidenced by the fact that L.H. testified that, in each instance, Arcuri lubricated his fingers by licking them").

{¶57} N.B.'s use of the term "middle part" does not alter this conclusion. Courts of necessity have allowed children to testify using terms such as "private" and "pee-pee" when describing their sexual organs. *See, e.g., State v. Smith*, 10th Dist. Franklin No. 03AP-1157, 2004-Ohio-4786, ¶ 19. N.B. described her "middle part" as being covered by her pants but not being her "butt," it felt wet, and she did not like it when he put his finger in it. The jury could reasonably infer that N.B. was describing her vagina.

24

{¶58} Finally with respect to Count 3, Mack argues that N.B. was "not subject to any force and testified that [Mack] never told her not to tell anyone or threaten what would happen if she told." Appellant's Brief at 16. Admittedly, N.B. did not testify that Mack threatened her as J.C. and Z.B. testified. Nonetheless, as noted above, "[a] person in a position of authority over a child under thirteen may be convicted of rape of that child with force * * * without evidence of express threat of harm or evidence of significant physical restraint." *Dye*, 82 Ohio St.3d 323, 695 N.E.2d 763, at syllabus. Here, there was evidence that Mack exercised authority over the children and that N.B. did not like what Mack was doing to her. Accordingly, we find that the element of force was proven with respect to N.B.

{¶59} In order to convict Mack of Gross Sexual Imposition as charged in Counts 4 and 5, the State was required to prove beyond a reasonable doubt that he had "sexual contact with another * * * when * * * [t]he other person * * * is less than thirteen years of age." R.C. 2907.05(A)(4). "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). For Gross Sexual Imposition as charged in Count 6, the State was required to prove that Mack "knowingly touch[ed] the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, * * * and the touching is done with an intent to * * * arouse or gratify the sexual desire of any person." R.C. 2907.05(B).

{¶60} In her testimony, Z.B. described an incident where she and Mack were sitting or lying on her bed while others were in the room. Mack "put his finger in [her]

25

underwear" and touched her "middle part," i.e., where she pees. She testified that his skin did not touch her skin but touched "the top of [her] underwear." She also indicated that she "had to hold [her] leg and then he put his finger in there." He touched her butt over her clothes. He touched her chest under her clothes. According to Malmer, Z.B. told Watson that Mack had touched her nipples, butt, and private area under her clothing and rubbed her private (area).

{¶61} Mack claims there was insufficient evidence that he touched Z.B.'s genitalia "not through clothing" which was required to sustain a conviction under Count 6. We acknowledge that Z.B.'s testimony was inconsistent as to whether Mack made contact with her genitalia. Certain things she said (as well as her statements during the interview with Watson) could reasonably be construed as demonstrating contact with the genitalia and, therefore, sufficient evidence exists for Count 6. Concerning the weight of the evidence, we defer to the jury's resolution of the inconsistencies. *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 37 ("[t]he jury 'may believe or disbelieve any witness or accept part of what a witness says and reject the rest'") (citation omitted).

{¶62} With respect to all the counts of Gross Sexual Imposition, Mack claims there was no evidence of an intent or purpose to arouse or gratify the sexual desire of any person. "In the absence of direct testimony regarding sexual arousal or gratification, 'the trier of fact may infer a purpose of sexual arousal or gratification from the type, nature and circumstances of the contact, along with the personality of the defendant.'" (Citation omitted.) *State v. Heiney*, 2018-Ohio-3408, 117 N.E.3d 1034, ¶ 92 (6th Dist.). Here, a purpose of sexual arousal or gratification is readily inferable from the circumstances of

26

the incidents. The touching always involved the pubic area in situations where such touching was not justified, i.e., Mack was not bathing or dressing the children. Moreover, there was significant evidence of the sexualized nature of Mack's relationship with the children. J.C. described Mack masturbating and commenting that the shorts she and her sisters were wearing made him want to touch them. Z.B. described Mack exposing himself and playing "mom and dad" with N.B. under the covers. N.B. also made reference to Mack wanting to play "home." Lastly, Mack threatened J.C. and Z.B. not to tell anyone about the touching, from which an illicit purpose may be inferred.

{¶63} The second and third assignments of error are without merit.

{¶64} In the seventh assignment of error, Mack argues that it was plain error for the trial court not to merge the three counts of Gross Sexual Imposition as allied offenses.

{¶65} In the present case, no objection was raised to sentences being imposed for each count of Gross Sexual Imposition. "[T]he failure to raise the allied offense issue at the time of sentencing forfeits all but plain error." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 28; Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858, ¶ 8. "To establish plain error, [the appellant] must show that an error occurred, that the error was obvious, and that there is 'a reasonable *probability* that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Citation omitted.) *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66.

27

Case No. 2023-T-0029

{¶66} "A defendant may be indicted and tried for allied offenses, but may be sentenced only one of the allied offenses." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 17; R.C. 2941.25(A) ("[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one").

{¶67} The test to determine whether allied offenses should be merged is "well known":

> We have applied a three-part test under R.C. 2941.25 to determine whether a defendant can be convicted of multiple offenses: "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions.

(Citation omitted.) *Bailey* at ¶ 10.

{¶68} With respect to Gross Sexual Imposition and similar crimes of a sexual nature, it is well-established among Ohio courts of appeal that "[o]ffenses involving distinct, different sexual activity each constitute a separate crime with a separate animus, and are not allied offenses of similar import, even when they are committed in the course of the same encounter." (Citation omitted.) *State v. Stites*, 1st Dist. Hamilton Nos. C-190247 and C-190255, 2020-Ohio-4281, ¶ 87. Accordingly, in *Sanchez*, this court held that Gross Sexual Imposition involving "sexual contact" with the victim's anal area did not merge with Gross Sexual Imposition/Rape involving digital penetration of the victim's vagina. *Sanchez*, 2020-Ohio-5576, at ¶ 114. *See also In re D.H.*, 8th Dist. Cuyahoga

28

No. 109284, 2020-Ohio-5003, ¶ 36 ("[t]he game of tag involved separate instances of appellant touching T.B.'s buttocks and vagina" and, "[a]s these acts were committed separately, they do not merge"); *State v. Kalka*, 8th Dist. Cuyahoga No. 106339, 2018-Ohio-5030, ¶ 56 (the acts did not merge where "one count of gross sexual imposition was relating to the touching of the victim's breasts, and the second was for touching the vaginal area"); *State v. Peace*, 11th Dist. Portage No. 2017-P-0037, 2018-Ohio-3742, ¶ 29 ("there is no doubt that Peace's conduct constitutes two separate and distinct acts, i.e., his kissing a bruise on the child's hip is separate from his placing his tongue in the child's vagina" so that "the crimes do not merge"); *State v. Jordan*, 2d Dist. Champaign No. 2016-CA-17, 2017-Ohio-5827, ¶ 11 ("Jordan's touching of H.T.'s breast and vaginal area were separate acts, each with a distinct significance or import").

{¶69} In light of the foregoing, Mack has failed to demonstrate that the failure to merge the three counts of Gross Sexual Imposition was error, and, if arguably error, certainly not obvious error. The precedent supporting separate convictions also undermines Mack's alternative argument that the failure to object to the separate convictions amounts to ineffective assistance of counsel. *Kalka* at ¶ 57 (where the counts of Gross Sexual Imposition did not merge, "[d]efense counsel was not ineffective for failing to object").

{¶70} The seventh assignment of error is without merit.

{¶71} In the sixth assignment of error, Mack contends that the sentences of life without parole imposed for Rape under Counts 1 to 3 are contrary to law.

{¶72} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing

29

court."  R.C. 2953.08(G)(2).  "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the sentence is * * * contrary to law."  R.C. 2953.08(G)(2)(b).

{¶73}  When sentencing an offender for Rape pursuant to R.C. 2907.02(A)(1)(b) (the offender "engage[d] in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age"), the "offender * * * shall be sentenced to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code."  R.C. 2907.02(B).  However, "if the victim * * * is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, * * * the court may impose upon the offender a term of life without parole."  *Id.*  "[I]f the court does not impose a sentence of life without parole when authorized pursuant to division (B) of section 2907.02 of the Revised Code, the court shall impose upon the person an indefinite prison term consisting of one of the following: * * * If the victim was less than ten years of age, a minimum term of fifteen years and a maximum of life imprisonment.  * * *  If the offender purposely compels the victim to submit by force or threat of force, * * * a minimum term of twenty-five years and a maximum of life imprisonment."  R.C. 2971.03(B)(1)(b) and (c).  The factual findings necessary to impose sentence under R.C. 2907.02(B) and R.C. 2971.03(B)(1)(b) and (c) must be made by the jury.  *State v. Bowers*, 163 Ohio St.3d 28, 2020-Ohio-5167, 167 N.E.3d 947, ¶ 17; *State v. Louis*, 2016-Ohio-7596, 73 N.E.3d 917, ¶ 79 (4th Dist.).

{¶74}  In the present case, Counts 1 to 3 of the Indictment charged Mack with Rape "*in violation of the Ohio Revised Code, Title 29, Section 2907.02(A)(1)(b)&(B),*

30

2971.03(B)(1)(b), and 2971.03(B)(1)(c)," and contained the additional factual finding (Factual Finding #1) that "pursuant to Ohio Revised Code 2971.03(B)(1)(b), the victim was less than ten years of age." At the close of trial, the jury was instructed: "If your verdict is guilty [with respect to Counts 1 through 3], you will separately decide beyond a reasonable doubt whether [J.C. or N.B.] was less than 10 years of age at the time of the offense." Verdict forms for the additional factual question to Counts 1 to 3 were submitted to the jury providing: "We the Jury in this case, duly impaneled and sworn or affirmed, * * * find that [J.C. or N.B.] * ["was" or "was not"] less than ten (10) years of age at the time of the offense * * *."

{¶75} Mack contends that the trial court could not sentence him to life without parole because, according to the language of the Indictment, Factual Finding #1 was "pursuant to Ohio Revised Code 2971.03(B)(1)(b)." "There is no reference to Factual Finding #1 being in regard to R.C. 2907.02(B). As such it is only applicable to R.C. 2971.03(B)(1)(b) and the authorized sentence there of fifteen-years to life if the finding is made. * * * The jury never found any victim under the age of 10 years old for purposes of R.C. 2907.02(A)(1)(b) and a sentence of life without parole is contrary to law and must be vacated." Appellant's Brief at 24-25.

{¶76} This court is not aware of any rule or principle of law supporting Mack's contention that Factual Finding #1 to Counts 1 through 3 was limited to the imposition of sentence pursuant to R.C. 2971.03(B)(1)(b) despite the "pursuant to" language of the Indictment. We note that Factual Finding #1 was adjunct to Counts 1 to 3 of the Indictment and that, apart from the Rape charges, which included division (B) of section 2907.02, had no legal significance. Moreover, the language of R.C. 2971.03(B)(1)

31

references R.C. 2907.02(B) ("if the court does not impose a sentence of life without parole when authorized pursuant to division (B) of section 2907.02 of the Revised Code"). In no way did the language of Factual Finding #1 misappraise Mack "of that which he may expect to meet and be required to answer." (Citation omitted.) *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 10. Also, the jury was never advised, either in the instructions or verdict forms, that the "less than ten years of age" finding was being made for any particular purpose. The purpose of the factual finding did not concern the jury as "sole judges of the facts" and of "what testimony is worthy of belief and what testimony is not worthy of belief." The subject of punishment, i.e., the purpose of the factual finding, was for the trial court. Accordingly, the factual finding that the victims were under ten years of age under Counts 1 to 3 was not limited to the imposition of sentence pursuant to R.C. 2971.03(B)(1)(b) but was equally applicable to sentencing pursuant to R.C. 2907.02(B).

{¶77} The cases such as *State v. Louis*, 2016-Ohio-7596, 73 N.E.3d 917, and *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, in which life without parole sentences were found contrary to law, are readily distinguishable. In both cases, the jury did not make a specific finding that the victim was less than ten years of age or any other finding that would allow the trial court to impose a sentence of life without parole. *Louis* at ¶ 79 ("[b]ecause the jury did not specifically find * * * the victim was less than ten, the trial court could not sentence her to life without parole pursuant to R.C. 2907.02(B)"); *Setty* at ¶ 121 ("[w]hile the trial court unquestionably believed appellant caused Lo.R. serious physical harm during the course of the rapes, the trial court was not permitted to make this additional finding, independent from the jury,

32

to enhance the statutory maximum penalty permitted by R.C 2907.02(B)"). In the present case, the jury's finding that J.C. and N.B. were less than ten years of age enabled the trial court to impose sentence under R.C. 2907.02(B) or R.C. 2971.03(B)(1)(b). *Bowers*, 163 Ohio St.3d 28, 2020-Ohio-5167, 167 N.E.3d 947, at ¶ 23 ("[t]he findings made by the jury in this case [that the victim was under the age of ten] authorized only two discrete sentences: 15 years to life under R.C. 2971.03(B)(1)(b) and life without parole under R.C. 2907.02(B)").

{¶78} The sixth assignment of error is without merit.

{¶79} In the ninth assignment of error, Mack argues that the trial court failed to make a complete proportionality finding necessary to impose consecutive sentences and that the record did not support the imposition of consecutive sentences.

{¶80} Initially, we note that any error in the imposition of consecutive sentences is effectively rendered moot by the imposition of life without parole. *State v. Burgos-Delgado*, 2023-Ohio-1817, 216 N.E.3d 69, ¶ 52 (8th Dist.) ("the issue of consecutive-sentence findings is 'moot' because it is purely 'academic' given the imposition of a sentence to life without the possibility of parole"); *State v. Austin*, 7th Dist. Mahoning No. 16 MA 0068 , 2019-Ohio-1185, ¶ 90 ("a challenge to the imposition of determinate sentences for firearms specifications consecutive to a sentence of life without parole is moot"); *State v. Davie*, 11th Dist. Trumbull No. 92-T-4693, 1995 WL 870019, *45 (where "[t]he trial court ordered his sentence for aggravated burglary to be served consecutively to his death sentence * * * Appellant is simply not prejudiced by the consecutive sentences").

Case No. 2023-T-0029

{¶81} Assuming the issues were not moot, Mack's arguments lack merit. In order to require an offender to serve prison terms consecutively, the sentencing court, both at the sentencing hearing and in the sentencing entry, must find, inter alia, that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. When considering the imposition of consecutive sentences, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶82} At the sentencing hearing in the present case, the trial court stated that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct" but omits specific mention of "the danger the offender poses to the public." Although imperfect, we find the trial court adequately made the required finding regarding the proportionality of consecutive sentences. This court and others have found the proportionality requirement satisfied where the court omitted reference to the danger the offender poses to the public but otherwise demonstrated that it considered the proportionality of consecutive sentences. *Arcuri*, 2016-Ohio-8254, at ¶ 90 ("[t]hat the court considered the proportionality of Arcuri's sentence with respect to the seriousness of his conduct is demonstrated by the court's finding of several factors rendering that conduct more serious"); *State v. Novoa*, 7th Dist. Mahoning No. 22 MA 0020, 2023-Ohio-3595, ¶ 23 (the sentencing court's variation from the statutory language with respect to

34

the danger the offender poses to the public "is a distinction without a difference"); *see Bonnell* at ¶ 29 ("a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld").

{¶83} Having reviewed the record, we are unable to conclude that it clearly and convincingly does not support the trial court's consecutive sentencing findings. We note, in particular, that: Mack has served a prior prison sentence and was on post-release control at the time he committed these offenses; the victims were all under the age of ten and were "traumatized in a manner and degree that only time will reveal"; there is a very high risk of re-offending; Mack threatened two of the victims with harm if they reported the abuse; Mack's familial relationship with the victims and their mother facilitated the offenses; and Mack has neither shown remorse nor accepted responsibility for his conduct.

{¶84} The ninth assignment of error is without merit.

{¶85} For the foregoing reasons, Mack's convictions and sentence for multiple counts of Rape and Gross Sexual Imposition are affirmed. Costs to be taxed against the appellant.

JOHN J. EKLUND, P.J.,

ROBERT J. PATTON, J.,

concur.

35

Case No. 2023-T-0029